## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## (NORTHERN DIVISION)

|  |  |
|---|---|
| LEGENDS TITLE, LLC, *et al.*,<br><br>　　　　*Plaintiffs*,<br><br>v.<br><br>CAPITAL ONE,<br>NATIONAL ASSOCIATION, *et al.*,<br><br>　　　　*Defendants*. | Case No.: 1:22-CV-00650-CCB |

### MEMORANDUM IN SUPPORT OF CAPITAL ONE, N.A.'S MOTION TO DISMISS UNDER RULE 12(b)(2), AND IN THE ALTERNATIVE, UNDER RULE 12(b)(6)

Defendant Capital One, N.A. ("Capital One") moves the Court to dismiss the claims asserted against Capital One in the Complaint filed by Plaintiffs Legends Title, LLC ("Legends Title") and its managing member, Lori Gagnon ("Gagnon") (together, "Plaintiffs"), under Federal Rules of Civil Procedure 12(b)(2), and in the alternative, Rule 12(b)(6). In support of this Motion, Capital One states as follows:

### I.    INTRODUCTION

This is a business email compromise case. Legends Title, which specializes in real estate settlements, and its managing member, Gagnon, an attorney, contend they are victims of fraud. While Plaintiffs were paying off a real estate transaction for their clients, Defendants Darrel Mark Thomas ("Thomas") and Vanfica 07 Inc. ("Vanfica") allegedly sent Plaintiffs a phishing email to wire nearly $334,000 to an account at Capital One. Almost a week after realizing the intended beneficiary did not receive the funds, Plaintiffs attempted to recover the money. Plaintiffs do not allege that they attempted to confirm or verify the wire transfer instructions. Nor do Plaintiffs

claim that they did not authorize the wire transfer.  Instead, Plaintiffs contend that Capital One aided and abetted the alleged fraudsters by providing the account to which Plaintiffs transferred the funds.  Plaintiffs also assert that, although Capital One retained none of the funds, it nevertheless should be liable for unjust enrichment under Maryland law.  While it is unfortunate that Plaintiffs were tricked into sending money via wire transfer to a fraudster, this case should be dismissed as to Capital One for the following reasons.

First, the Court lacks personal jurisdiction over Capital One in this case.  Plaintiffs are pursuing this case in Maryland, yet no party is based in Maryland and none of the allegedly tortious conduct occurred in Maryland.  As a result, the Court should dismiss Capital One as a defendant under Rule 12(b)(2).

Second, the Court should dismiss the unjust enrichment and aiding and abetting fraud claims against Capital One for failure to state a claim under Rule 12(b)(6).  These common law claims are preempted by statute.  Importantly, Article 4A of the Uniform Commercial Code governs the rights and liabilities of parties involved in wire transfers and therefore displaces common law claims against banks for frauds arising out of such transactions.  Plaintiffs also failed to comply with Maryland's Adverse Claims Statute, so they cannot pursue damages based on Capital One not recognizing their purported entitlement to the funds.

Even if these claims were not barred by statute, which they are, Plaintiffs fail to plead facts that adequately show Capital One aided and abetted fraud or was unjustly enriched by providing an account to one of the alleged fraudsters.  Because Plaintiffs' claims lack the requisite factual and legal support to state a claim, they should be dismissed.

## II.    FACTUAL ALLEGATIONS

Plaintiff Legends Title, LLC is principally based in Utah.  *See* Compl. ¶ 1.  Plaintiff Gagnon, Legends Title's sole member, is a citizen of Utah.  *Id.* ¶¶ 2, 10.  Defendant Thomas is a

citizen of California, *id.* ¶ 4, and Defendant Vanfica is incorporated under Florida law but has no business operations in the United States, *id.* ¶ 5.  Lastly, Defendant Capital One is a national bank, headquartered in Virginia.  *Id.* ¶ 3.

The alleged misconduct began on or about September 2, 2020 when "Thomas and/or Vanfica sent a phishing email to Plaintiffs providing mortgage payoff instructions specifically relating to a refinance transaction being conducted."  *Id.* ¶ 16.   On or about September 10, 2020, in response to the phishing email, "Legends Title transferred $333,734.98 into the fraudulent account in Defendant's bank."  *Id.* ¶ 17.  Legends Title's wire instructions directed its bank, the Bank of Utah, to wire the funds to a Capital One account ending in -7060 belonging to Thomas (the "Account").  *See id.* ¶¶ 13, 17.  Plaintiffs, however, allege that Legends Title intended to transfer the funds to Quicken Loans to pay off mortgages for its customers.  *Id.* ¶¶ 18, 19.

Thomas immediately began to spend the funds transferred by Legends Title to the Account. *Id.* ¶ 20(a).  The day after receiving the funds, Thomas allegedly withdrew over $147,000 from the Account.  *Id.* ¶ 20(b).  After those initial withdrawals, Plaintiffs reported the purported theft to the Bank of Utah, which allegedly notified Capital One on September 15, 2020 of the reported theft. *Id.* ¶¶ 22, 23.  Around the same time, Capital One froze Thomas' Account, preventing further withdrawals.  *Id.* ¶ 33.  Capital One, the Bank of Utah, and Legends Title engaged in discussions about the wire transfer, and on July 1, 2021, Capital One returned the remaining balance in Thomas' Account, which totaled $185,854, to Legends Title.  *Id.* ¶¶ 26, 27.  Plaintiffs have not recovered the $147,880 that Thomas withdrew from his Account before it was frozen.  *Id.* ¶ 37.

## III.   THE COURT LACKS PERSONAL JURISDICTION OVER CAPITAL ONE.

### A.   Standard for Dismissal Under Rule 12(b)(2)

On a motion to dismiss pursuant to Rule 12(b)(2), the plaintiff bears the burden of establishing that a court has personal jurisdiction over a defendant.  *Pandit v. Pandit*, 808 F. App'x

179, 183 (4th Cir. 2020).  The court may consider facts alleged in the Complaint as well as the parties' legal memoranda and supporting affidavits.  *Id.* at 181 n.2.  Although disputed facts and reasonable inferences must favor the plaintiff, the plaintiff must offer more than "speculation or conclusory assertions about contacts with a forum state" to survive dismissal under Rule 12(b)(2).  *Id.* at 183.

**B.**      **Plaintiffs Fail to Allege Any Facts to Justify this Court's Exercise of Personal Jurisdiction Over Capital One.**

"A court may exercise two types of personal jurisdiction, general or specific." *Id.*  In Maryland, the contours of general and specific jurisdiction are "set by the due process clause of the Federal Constitution."  *Beyond Sys., Inc. v. Realtime Gaming Holding Co., LLC*, 388 Md. 1, 15 (2005).  The Court has neither general nor specific personal jurisdiction over Capital One in this action.

**1.**      **No General Jurisdiction**

The Court lacks general personal jurisdiction over Capital One because Capital One is neither incorporated in Maryland nor is it headquartered in the state.  The Supreme Court held in *Daimler AG v. Bauman* that a corporation's "place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'"  571 U.S. 117, 137 (2014); *see also Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 132 (4th Cir. 2020) (A corporation is "fairly regarded as at home" in "the forums where it is incorporated and where it has its principal place of business.").  *Daimler* established narrow additional grounds where a foreign corporation may be subject to general jurisdiction, if its "affiliations with the State are so 'continuous and systematic' as to render it essentially at home in the forum State."  *Daimler*, 571 U.S. at 138–39 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

Capital One is a national bank, headquartered in Virginia.  *See* Patterson Decl. Exh. A

4

(establishing that Capital One is a national bank with its main office in Virginia). Plaintiffs concede this point. *See* Compl. ¶ 3 ("Defendant's principal place of business is McLean, Virginia."). It is undisputed, therefore, that Capital One is not "at home" in Maryland.

Nor have Plaintiffs alleged *any* facts showing that this is an "exceptional case" where the Court has general jurisdiction over Capital One because its contacts with the state are "so 'continuous and systematic' as to render [it] essentially at home in the forum." *Daimler*, 571 U.S. at 139 n.19. As *Daimler* cautioned, a corporation "that operates in many places can scarcely be deemed at home in all of them." *Id.* at 139 n.20. And so, when a corporation is neither incorporated nor maintains its principal place of business in a state, mere contacts, *no matter how* "*continuous and systematic*," are extraordinarily unlikely to add up to an "exceptional case." *See Fidrych*, 952 F.3d at 134.

Following *Daimler*'s teachings, the Fourth Circuit and courts within it have previously declined to exercise general personal jurisdiction over companies similarly situated to Capital One. *See, e.g.*, *Fidrych*, 952 F.3d at 134 ("Because there is nothing that would distinguish Marriott's relationship with South Carolina from its relationship with any of the other states where it does business but where it is not incorporated or headquartered, this is not the exceptional case for general jurisdiction contemplated by the *Daimler* Court."); *Nat'l Fair Hous. All. v. Bank of Am., N.A.*, 401 F. Supp. 3d 619, 628 (D. Md. 2019) (Blake, J.) (recognizing that there was no general jurisdiction over Bank of America in Maryland because that national bank is not incorporated or principally located there); *Richards v. NewRez LLC*, Case No. CV ELH-20-1282, 2021 WL 1060286, at *15 (D. Md. Mar. 18, 2021) (holding that there was no general jurisdiction over a mortgage servicer that operated nationwide because it was not at home in Maryland); *Brown v. SunTrust Bank*, Case No. 4:19-CV-02813-SAL-KDW, 2020 WL 3848169, at *3 (D.S.C. Feb.

24, 2020) (stating that "the fact that [SunTrust] is purportedly the largest national bank in South Carolina with approximately 136 branches is immaterial to jurisdiction . . . this court cannot exercise general jurisdiction over [SunTrust]"), *R&R adopted in relevant part*, 2020 WL 1921578 (D.S.C. Apr. 21, 2020).

As this Court has observed, plaintiffs seeking to invoke general jurisdiction over a foreign defendant face "a high bar, and with good reason." *Osiris Therapeutics, Inc. v. MiMedx Grp., Inc.*, Case No. CV CCB-18-950, 2018 WL 6573099, at *3 (D. Md. Dec. 13, 2018) (Blake, J.) ("Nonresident defendants must be allowed 'to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).  Plaintiffs here have failed to clear this bar, and so the Court lacks general personal jurisdiction over Capital One.

### 2.      No Specific Jurisdiction

The Court also lacks specific jurisdiction over Capital One because Plaintiffs' claims have nothing to do with Capital One's contacts in Maryland.  A foreign defendant may be subject to specific personal jurisdiction in a state if the defendant's "qualifying contacts with the forum state also constitute the basis for the suit." *Osiris Therapeutics*, 2018 WL 6573099, at *4 (quoting *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 559 (4th Cir. 2014)).  In determining whether specific jurisdiction exists, courts consider: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims arose out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable." *Id*.

Simply stated, Plaintiffs' Complaint is devoid of *any* allegation that the activity for which Plaintiffs allege Capital One (or any Defendant for that matter) is liable occurred in Maryland.

Plaintiff Gagnon is a citizen of Utah, and so is Legends Title, the company of which Ms. Gagnon is the sole owner. *See* Compl. ¶¶ 1, 2, 10. Plaintiffs make no claim that they transacted any activity in Maryland, or that Capital One engaged in activity in Maryland giving rise to Plaintiffs' claims. Further, the alleged fraudsters are based in California and Florida, respectively, *id.* ¶¶ 4, 5, and Plaintiffs do not allege the fraudsters ever visited, much less committed the alleged fraud, in Maryland. Because Plaintiffs make no allegations that their claims against Capital One are connected to Maryland in any way, the Court does not have specific personal jurisdiction over Capital One.

This Court has neither general nor specific personal jurisdiction over Capital One, and it should dismiss Plaintiffs' claims against Capital One accordingly. *See Pandit*, 808 F. App'x at 187 (affirming dismissal under Rule 12(b)(2) where the plaintiff "alleged no facts suggesting the possible existence of personal jurisdiction over" the defendants).

## IV. ALTERNATIVELY, PLAINTIFFS' CLAIMS AGAINST CAPITAL ONE SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

In any event, Plaintiffs' claims against Capital One fail to state a claim. Plaintiffs assert two causes of action against Capital One: (1) aiding and abetting fraud, and (2) unjust enrichment. The Court should dismiss these claims under Rule 12(b)(6) for two independent reasons: (1) the claims are preempted by statute, specifically UCC Article 4A and Maryland's Adverse Claims Statute; and (2) Plaintiffs fail to plead facts that adequately support the claims.

### A. Standard for Dismissal under Rule 12(b)(6)

To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must offer more than "a formulaic recitation of the elements of a cause of action," and "naked assertions devoid of further factual enhancement" are insufficient. *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009).  Further, the factual allegations must show that the plaintiffs' entitlement to relief is a "plausibility" and not just a "possibility."  *Twombly*, 550 U.S. at 557.

Claims that sound in fraud must meet the heightened pleading requirements of Rule 9(b).  *See Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 629 (4th Cir. 2008) (stating that "plaintiffs' allegations sound in fraud and thus are subject to Rule 9(b)").  One purpose of Rule 9(b) is to "protect[] defendants from the reputational harm that results from frivolous allegations of fraudulent conduct."  *Cozzarelli*, 549 F.3d at 629.  "A complaint which fails to specifically allege the time, place and nature of the fraud is subject to dismissal pursuant to a Rule 12(b)(6) motion."  *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D. Md. 2000).

### B.  Both of Plaintiffs' Claims Against Capital One Are Preempted By Statute.

Plaintiffs' unjust enrichment and aiding-and-abetting-fraud claims against Capital One are preempted by UCC Article 4A, which provides the exclusive rights and liabilities related to wire transfers.  Plaintiffs' claims also contradict Maryland's Adverse Claims Statute to the extent they seek damages for Capital One's refusal to recognize Plaintiffs' asserted entitlement to the funds.

### 1.  UCC Article 4A Displaces Plaintiffs' Claims against Capital One.

Plaintiffs' claims against Capital One are completely preempted by Article 4A.  Claims against a beneficiary bank for accepting a wire transfer in the circumstances alleged here are covered by—and therefore displaced by—Article 4A.  *See Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 223 (4th Cir. 2002) (explaining that "rules adopted from Article 4A serve as the exclusive means for determining the rights, duties and liabilities of all parties involved"); *Peter E. Shapiro, P.A. v. Wells Fargo Bank, N.A.*, 795 Fed. App'x. 741, 750-51 (11th Cir. 2019) ("Article 4A specifically (and thus exclusively) defines the duties, rights, and liabilities of the parties in the misdescription-of-beneficiary situation presented by this case.").

8

Article 4A governs electronic funds transfers, broadly defined as "the series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order."  Md. Code, Com. Law § 4A-104(a).  The Maryland Court of Appeals has held that "the [UCC] controls when that statute explicitly contradicts pre-existing common law."  *Hartford Fire Ins. Co. v. Maryland Nat. Bank, N.A.*, 341 Md. 408, 429 (1996).  And "even where there is no explicitly applicable statute in the Commercial Law Article, [Maryland courts] hesitate to adopt or perpetuate a common law rule that would be plainly inconsistent with the legislature's intent in passing Titles 3 and 4 of that Article."  *Id.*  The Official Comment to Article 4A explains why:

> Funds transfers involve competing interests ... The rules that emerged [from the statutory drafting] represent a careful and delicate balancing of those interests and are intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article. Consequently, resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article.

Md. Code Ann., Com. Law § 4A-102, cmt.

This Court in *National Union Fire Insurance v. Bank of America* emphasized these principles in a similar case nearly twenty years ago: "It would be dangerous, and an unsound precedent indeed, to impose tort liability upon a bank for participating in a wire transfer involving stolen funds."[1]  240 F. Supp. 2d 455, 458 (D. Md. 2003).  This holds true "even if it could be

---

[1] The opinion in *National Union Fire Insurance v. Bank of America* was vacated shortly after its issuance. *Nat'l Union Fire Ins. v. Bank of Am., N.A.*, Case No. CIV.A. S 02 CV-3719, 2003 WL 22508090 (D. Md. July 15, 2003).  But as another Court in this District later explained, "the decision was vacated, not because [the Court] had reconsidered and altered [its] conclusions, but because Plaintiff had requested that vacatur, and the request was granted as an unopposed motion" submitted as part of the parties' private settlement agreement. *Nat'l Union Fire Ins. Co. v. Allfirst Bank*, 282 F. Supp. 2d 339, 351 (D. Md. 2003).  *Allfirst Bank* adopted the rationale in key portions of the *National Union Fire Insurance v. Bank of America* opinion "not because it is binding, but

shown that the bank might have negligently dealt with one or two items deposited into the account from or to which the wire-transferred funds came or went." *Id*. In analyzing the UCC, the Court held that an "action that is prohibited directly by statute cannot be maintained by indirect means." *Id*. Courts nationwide considering similar facts to those alleged by Plaintiffs have reached the same determination. *See, e.g.*, *Langston & Langston, PLLC v. SunTrust Bank*, 480 F. Supp. 3d 737, 744 (S.D. Miss. 2020) (holding that common law claims against a bank stemming from a wire transfer scam were displaced by the UCC); *Patco Constr. Co. v. People's United Bank*, 684 F.3d 197, 215 (1st Cir. 2012) (finding common law claims preempted where they would create "rights, duties, and liabilities" inconsistent with Article 4A); *Sliders Trading Co., LLC v. Wells Fargo Bank NA*, Case No. 17-CV-04930-LB, 2017 WL 6539843, at \*5 (N.D. Cal. Dec. 21, 2017) (same); *Schlegel v. Bank of America, N.A.*, 628 S.E.2d 362, 368 (Va. 2006) (same).

Article 4A governs the rights and liabilities of parties to a wire transfer like the one here. Plaintiffs assert that Capital One should be liable because Plaintiffs' wire instructions named Quicken Loans, LLC as the beneficiary but directed the funds be transferred to an account number associated with Thomas. These circumstances amount to a "misdescription" of the beneficiary under Md. Code., Com. Law § 4A-207. *See First Sec. Bank of New Mexico, N.A. v. Pan Am. Bank*, 215 F.3d 1147, 1152 (10th Cir. 2000) ("A misdescription occurs when a wire identifies a beneficiary by name and account number and the name and account number identify different persons or entities."). "Section 4A-207 lays out exactly who is liable under several possible situations involving a misdescription." *Langston & Langston*, 480 F. Supp. 3d at 742.

---

because it is compelling." *Nat'l Union Fire Ins. Co. v. Allfirst Bank*, 282 F. Supp. 2d at 351. The Court should do the same here.

The baseline rule is that Capital One "need not determine whether the name and number refer to the same person," and "it may rely on the number as the proper identification of the beneficiary of the order." Md. Code, Com. Law § 4A-207(b)(1). Transactions processed in this manner are final and valid. An exception to this rule applies if Capital One "*knows* that the name and number identify different persons," Md. Code, Com. Law § 4A-207(b)(2) (emphasis added), and proceeds with the transaction anyway. Only then could Capital One be liable for the loss. *See Langston & Langston*, 480 F. Supp. 3d at 742–44.

Knowledge under the UCC requires *actual knowledge* and not simply constructive knowledge. Md. Code, Com. Law § 4A-102(b). Thus, Article 4A precludes liability for common law claims where Capital One relies on the account number provided in a payment order without awareness of a conflict between the number and name.

Plaintiffs fail to plausibly plead Capital One had actual knowledge. They make the conclusory allegation that "Defendant Capital One had actual knowledge of the tortious and wrongful conduct of the Defendant Thomas." Compl. ¶ 71. The sole allegation Plaintiffs state to support this conclusion is that the "instructions provided by Defendants Thomas and Vanfica showed the beneficiary of the deposit as Quicken Loans, LLC, not Defendant Thomas." *Id.* ¶ 71. The logical leap from A (the misdescription) to B (Capital One's supposed awareness of the fraud) is unreasonable, and indeed, puzzling. It is hard to understand how Capital One's receipt of a misdescribed wire transfer could confer actual knowledge of Thomas' fraud to Capital One.[2]

---

[2] As the comment to § 4A-207 explains, "the clear trend is for beneficiar[ies'] banks to process payment orders by automated means." Md. Code, Com. Law § 4A-207, cmt. 2. When a bank uses an automated process to execute wire transfers, the bank does not gain actual knowledge of the information presented in the wire instructions. *See Langston & Langston*, 480 F. Supp. 3d at 744 ("Data stored in a computer system does not constitute actual knowledge, even if inspection of the data would have revealed a misdescription."); *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 140 S. Ct. 768, 777 (2020) ("if a [litigant] is not aware of a fact, he does not have 'actual knowledge' of that

At most, the misdescription may have been a "red flag" that Plaintiffs could argue should have made Capital One aware of Thomas' alleged fraudulent scheme.  *See also* Compl. ¶ 70 ("Capital One had constructive knowledge of Defendant Thomas' actions which exhibited class signs of fraud.").  But allegations of "red flags" surrounding fraudulent wire transfers do "not translate to [the beneficiary bank's] actual knowledge."  *Sliders Trading*, 2017 WL 6539843, at *8 (granting Wells Fargo's motion to dismiss); *see also Marshall v. Nat'l Bank of Middlebury*, Case No. 5:19-CV-246, 2021 WL 6803284, at *7 (D. Vt. Dec. 3, 2021) (grating motion to dismiss and holding that "[c]ourts in this Circuit have repeatedly found similar 'red flag' allegations insufficient to demonstrate actual knowledge.") (collecting cases); *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 140 S. Ct. 768, 776 (2020) (Black's Law Diction defines "actual knowledge" as "direct and clear knowledge, as distinguished from constructive knowledge").  The Complaint does not contain any allegation that plausibly suggests Capital One had the actual knowledge required to impose liability.  As a result, Plaintiffs' claims against Capital One fall within the ambit of Article 4A and must be dismissed.  *Hartford Fire Ins.*, 341 Md. at 428.

## 2.   Plaintiffs' Claims Conflict with Maryland's Adverse Claims Statute

Plaintiffs' claim that Capital One should be held liable for not returning to them the subject funds also contradicts Maryland's Adverse Claims Statute, Md. Code, Fin. Inst. § 5-306.  Section 5-306 expressly provides that banks need not recognize an adverse claim to a customer's deposit unless the claimant obtains a relevant court order or decree.  "This statute is designed to provide to banks certainty in proceeding when presented with third-party claims to account funds."  *Bank*

---

fact however close at hand the fact might be").  Plaintiffs do not allege that Capital One did anything besides automatically process the wire instructions.  In the world of modern banking, it is not reasonable to assume that Capital One manually processed Plaintiffs' wire transfer, especially when the Complaint is silent on the issue.

*of Am., N.A. v. Jericho Baptist Church Ministries, Inc.*, Case No. PX 15-02953, 2019 WL 498818, at *6 (D. Md. Feb. 8, 2019).

Plaintiffs do not allege that they sought or obtained the requisite court order regarding the funds they admittedly directed be deposited in Thomas' Account.  Yet Plaintiffs now claim that Capital One "unjustly retained the Plaintiffs' funds" after being notified of the alleged fraud. Compl. ¶¶ 77-78.  Under Maryland's Adverse Claims statute, Plaintiffs' notice was not enough to oblige Capital One to return the funds.  Instead, Plaintiffs needed a court order.  As one Court noted in analyzing Michigan's analogous Adverse Claims statute, "[t]here yet remains a world of difference between the notice provided by court order and the unsworn assertions of a private individual."  *Medilink Ins. Co. v. Comerica Bank*, Case No. 09-13692, 2011 WL 1103644, at *9 (E.D. Mich. Mar. 23, 2011).  Thus, a plaintiff's "failure to comply with the statutorily proscribed requirements of the Adverse Claim Statute precludes the imposition of any duty upon a bank to recognize any interests of adverse claimants in a deposit account."  *Id*.  Indeed, allowing Plaintiffs to assert common law claims against Capital One when they disregarded Maryland's Adverse Claims statute would essentially render the statute meaningless.

Ultimately, Capital One properly executed the wire transfer instructions in accordance with the UCC provisions detailed above.  At that point, Capital One was legally obligated to pay Thomas regardless of Plaintiffs' allegations of fraud.  Indeed, § 4A-404 of the UCC requires that a beneficiary bank make funds available to the beneficiary when it accepts the order, requiring the bank to pay the amount of the order upon acceptance.  Md. Code, Com. Law § 4A-404.  Had

Capital One unilaterally returned the funds to Plaintiffs, Capital One would face the risk of liability to Thomas under Article 4A of the UCC.[3]

The Court should not allow Plaintiffs to use common law claims to pursue relief that is governed explicitly by statute.  *See Nat'l Union Fire Ins.*, 240 F. Supp. 2d at 458 (stating that an "action that is prohibited directly by statute cannot be maintained by indirect means").

### C.      Plaintiffs Fail to Plead Facts Supporting Their Claims.

As separate and independent bases for dismissal, the Complaint also fails to sufficiently plead the elements of: (1) aiding and abetting fraud, especially considering the heightened standard applicable to such a claim sounding in fraud as provided by Rule 9(b), and (2) unjust enrichment against Capital One.

### 1.      Plaintiffs Fail to Adequately Allege Aiding and Abetting Fraud.

Plaintiffs contend that Capital One "aided and abetted the wrongful and tortious conduct of Defendants Thomas and Vanfica . . . by providing Defendant Thomas with a safe venue into which Plaintiffs could deposit the fraudulently obtained funds."  Compl. ¶ 72.  The "tortious conduct" refers to the fraud alleged in Counts I and II by Thomas and Vanfica.  *See id.* ¶ 66 (incorporating by reference Counts I and II, but not Counts III through V).[4]

Plaintiffs fail to state a claim of aiding and abetting because Capital One owed no duty to disclose or prevent the alleged fraud to Plaintiffs.  "Absent a duty to disclose, allegations that a

---

[3] *See* Md. Code, Com. Law § 4A-404, cmt. 3 ("[A fraud claim] may be grounds for recovery by the originator from the beneficiary after the beneficiary is paid, but it does not affect the obligation of the beneficiary's bank to pay the beneficiary. Unless the payment order has been cancelled pursuant to Section 4A-211(c), there is no excuse for refusing to pay the beneficiary and, in a proper case, the refusal may result in consequential damages.").

[4] Counts I and II are labeled "Intentional Misrepresentation – Money Damages," which Capital One refers to as fraud for ease.  *See Shulman v. Progressive Com. Cas. Co.*, Case No. CV DKC 19-1709, 2020 WL 758239, at *4 (D. Md. Feb. 14, 2020) ("the elements of [fraud and intentional misrepresentation under Maryland law] are one and the same").

defendant knew of the wrongdoing and did not act fail to state an aiding and abetting claim." *Schatz v. Rosenberg*, 943 F.2d 485, 496 (4th Cir. 1991); *see also Al-Sabah v. World Bus. Lenders, LLC*, Case No. CV SAG-18-2958, 2020 WL 3868989, at *27 (D. Md. July 9, 2020) (stating that a "defendant who owes a plaintiff no duty cannot be an aider and abettor based on a failure to disclose a third party's fraudulent activity against a plaintiff"); *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 295 (2d Cir. 2006) ("liability for aiding and abetting is limited to those with a duty to disclose").

Courts have repeatedly held that "banks do not owe non-customers a duty to protect them from the intentional torts of their customers." *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 232 (5th Cir. 2010) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir.2006)); *see also Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 226 (4th Cir. 2002) (rejecting an argument that banks owe a duty to noncustomers); *Lerner*, 459 F.3d at 286 ("a bank has no duty to customers of other banks"); *In re Peregrine Fin. Grp. Customer Litig.*, Case No. 12 C 5546, 2014 WL 4784113, at *8 (N.D. Ill. Sept. 25, 2014) (banks have no duty to disclose to non-customers); *In re Agape Litig.*, 681 F. Supp. 2d 352, 365 (E.D.N.Y. 2010) (bank did not provide "substantial assistance" by allegedly ignoring "red flags" of underlying scheme). This principle applies the same under Maryland law. *Maryland Env't Tr. v. Gaynor*, 370 Md. 89, 97 (2002) ("Maryland recognizes no general duty upon a party to a transaction to disclose facts to the other party."); *Schuster v. SLM Corp.*, Case No. CV CCB-17-2108, 2017 WL 4777708, at *3 (D. Md. Oct. 23, 2017) ("Banks do not owe an indeterminate duty to protect noncustomers from fraud.").

It is undisputed that Plaintiffs were not customers of Capital One in the wire transaction. As stated in the Complaint, Plaintiffs instructed the Bank of Utah, where Plaintiffs were customers, to transfer the funds to Capital One, where Thomas was a customer. Compl. ¶¶ 23, 13.

Nevertheless, the Complaint makes unsupported allegations that attempt to obscure the nature of the relationship between Capital One and Plaintiffs.  For example, Plaintiffs allege that by "retaining" the alleged fraudulent funds in Thomas' account, "Capital One created a banking relationship between the Plaintiffs and Defendant Capital One."  *Id.* ¶¶ 36.[5]  These strained allegations likely reflect Plaintiffs' attempt to establish a duty to a non-customer via an "intimate nexus" akin to contractual privity or its equivalent.  *Nat'l Grange Mut. Ins. Co. v. Verizon's Benefits Ctr.*, 541 F. Supp. 2d 745, 749-750 (D. Md. 2008) ("A well-established rule is that a bank, with certain narrow exceptions, does not owe a duty to a non-customer with whom it has no direct relationship . . . Based on an unusual set of facts, the Maryland Court of Appeals created a narrow exception to this general rule in" recognizing the intimate nexus test.).  But Plaintiffs' allegations fall far short of suggesting they had such an "intimate nexus" with Capital One.  *See Day v. United Bank*, Case No. CV PX-16-975, 2018 WL 3707833, at *7 (D. Md. Aug. 3, 2018) (the intimate nexus rule applies only in "atypical circumstances"), *aff'd*, 805 F. App'x 167 (4th Cir. 2020).

Plaintiffs cannot escape the general rule in this case because, despite their conclusory allegations otherwise, no relationship existed between Plaintiffs and Capital One.  Capital One therefore owed Plaintiffs no duty to prevent or disclose the fraud, and the aiding and abetting claim should be dismissed.

Even assuming Capital One owed Plaintiffs a duty, which it does not, the Complaint fails to sufficiently allege key elements of an aiding and abetting claim.  To survive dismissal of the claim, Plaintiffs must show: (1) "a violation of the law (tort) by the principal"; (2) the "defendant

---

[5] The Complaint also alleges that "Legends Title is an accountholder of Defendant Capital One with a 'Spark Business' Visa credit card," Compl. ¶ 11, even though this case has nothing to do with credit card transactions.  Moreover, Plaintiffs sued Capital One, N.A., a retail bank with which they have no relationship, not Capital One Bank (USA), N.A., the credit card company that issued the Spark Business Visa credit card Plaintiffs describe.

knew about the violation"; and (3) the "defendant gave substantial assistance or encouragement to the principal to engage in the tortious conduct." *Alleco, Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 340 Md. 176, 186 (1995).

Plaintiffs do not adequately plead the second element—that Capital One knew about Thomas' and Vanfica's fraud—for the reasons explained above in relation to Article 4A.  *See supra* Part IV.B.1.  Plaintiffs also fail to sufficiently allege that Capital One "gave substantial assistance or encouragement" to Thomas' or Vanfica's fraud.  *Alleco*, 340 Md. at 185.  Under Maryland law, the "aider or abettor must have taken this action knowing that the tortious act would be the natural consequence of his conduct."  *Moore v. Peitzmeier*, Case No. CV TDC-18-2151, 2020 WL 94467, at *9 (D. Md. Jan. 7, 2020) (quoting *Saadeh v. Saadeh, Inc.*, 150 Md. App. 305, 328 (2003)).  Facts supporting substantial assistance must be pled with particularity under Rule 9(b).  *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 254 (D. Md. 2000).

Plaintiffs' aiding and abetting claim hinges on the specious allegation that Capital One provided Thomas with a "safe venue," Compl. ¶ 72—an account—where the funds were transferred.  Plaintiffs do not allege that Capital One knew Thomas was a fraudster when he opened an account.  Nor do Plaintiffs allege that Capital One participated in, or was even aware of, the misrepresentations that "Thomas and/or Vanfica" made in the alleged phishing email.  *Id.* ¶ 16.  Instead, Plaintiffs rely on Thomas opening an account at Capital One—a routine business activity—as amounting to aiding and abetting fraud.  Such allegations fall far short of the "substantial assistance" required to trigger liability, however.  The "caselaw is clear that opening accounts and approving transfers, even where there is a suspicion of fraudulent activity, does not amount to substantial assistance."  *In re Agape Litig.*, 681 F. Supp. 2d at 365; *see also Renner v. Chase Manhattan Bank*, Case No. 98 CIV. 926 (CSH), 2000 WL 781081, at *12 (S.D.N.Y. June

16, 2000) ("The mere fact that all the participants in the alleged scheme used accounts at [a bank] to perpetrate it, without more, does not rise to the level of substantial assistance necessary to state a claim for aiding and abetting liability."); *El Camino Res., LTD. v. Huntington Nat. Bank*, 722 F. Supp. 2d 875, 911 (W.D. Mich. 2010) ("In the banking area, courts generally hold that a bank does not aid and abet its customer's wrongdoing merely by providing routine banking services to its customer.").

Courts facing analogous facts have reached the same conclusion under Maryland law.  For example, in *Adams*, the defendants had existing business relationships related to the alleged fraud, and according to the plaintiffs, this revealed that "aiding and abetting of fraud . . . must have taken place."  193 F.R.D. at 254.  The court rejected the claim, concluding that "legitimate business dealings" among defendants "do not raise any inference of aiding and abetting fraud."  *Id.*; *see also In re Pieterse*, Case No. 20-17425-MCR, 2021 WL 2189188, at *11 (Bankr. D. Md. May 28, 2021) (providing professional services to a fraudster, without more, is not "substantial assistance").

Plaintiffs allege routine business dealings between Capital One and Thomas, and they allege no relationship between Capital One and Vanfica.  Without more, Plaintiffs fail to plead with particularly that Capital One substantially assisted the alleged fraudsters.  While the scheme described in the Complaint is deeply unfortunate, Capital One cannot be held liable for the alleged deceptive acts of Thomas or Vanfica.

### 2.    Plaintiffs Fail to State a Claim of Unjust Enrichment

As explained in the Complaint, Capital One: (1) froze Thomas' account after receiving notice of the alleged fraud on September 15, 2020, and (2) returned $185,854 to Plaintiffs from Thomas' account on July 1, 2021.  Plaintiffs believe Capital One should have returned the funds sooner.  They contend that "[i]t would be unconscionable to allow Defendant Capital One to retain

earnings received using Plaintiffs funds [*sic*] obtained through fraudulent means from the date it began to receive notice of the fraud (September 15, 2020) through the date it finally reimbursed Plaintiffs (July 1, 2021)."  Compl. ¶ 82.  The claim seeks damages because Capital One "failed to timely reimburse Plaintiffs despite the fact that money remained in the account."  *Id.* ¶ 81.

"A claim for unjust enrichment requires the plaintiff to establish three elements: (1) the plaintiff conferred a benefit upon the defendant; (2) the defendant knew of or appreciated the benefit; and (3) the defendant accepted or retained the benefit under such circumstances that it would be inequitable to allow the defendant to retain the benefit without paying value in return." *Hobbs v. Martin*, Case No. CV JKB-16-749, 2017 WL 105675, at *2 (D. Md. Jan. 11, 2017).  "The purpose of restitution. . . is to prevent the defendant's unjust enrichment by recapturing the gains the defendant secured in a transaction."  *Bank of Am. Corp. v. Gibbons*, 173 Md. App. 261, 268 (2007).

Under Maryland law, when a bank customer deposits "ill-gotten funds" into his account, the funds benefit the customer, not the bank.  The bank cannot be unjustly enriched by the funds because the first element—requiring the bank to benefit from the funds—is not met.  As this Court in *National Union Fire Insurance v. Bank of America* held: "[w]hether or not the [beneficiary bank] was negligent in allowing money to be . . . wire transferred, it retains not a penny of the money.  Restitutionary remedies are inappropriate in such a circumstance."  240 F. Supp. 2d 455, 457 (D. Md. 2003); *see also Nat'l Union Fire Ins. Co. v. Allfirst Bank*, 282 F. Supp. 2d 339, 343 (D. Md. 2003) (quoting and adopting this rationale in *National Union Fire Insurance v. Bank of America*).  A beneficiary bank to a wire transfer does not "retain" the funds at issue because following completion of the transfer, the funds belong to the beneficiary, not to the beneficiary's bank.  *See* Md. Code, Com. Law § 4A-404(a).  In fact, a bank's treatment of the funds as its own

"will give rise to consequential damages" to the beneficiary as rightful owner of the funds. *Id.* Although Plaintiffs' wire transfer provided *Thomas* with clear monetary benefit, Plaintiffs conferred no such benefit on *Capital One*.

Apparently recognizing this authority, Plaintiffs allege that Capital One obtained an unconventional type of benefit from the fraudulent scheme: "Capital One had access to and used the funds in its daily business banking activities including, but not limited to, using the funds to support overnight deposits and interest earnings, solidifying its capital reserve requirements with the U.S. Federal banking system, and to make money for its shareholders." Compl. ¶ 80. Beyond these conclusory statements, Plaintiffs provide no facts that might reasonably suggest Capital One benefited from the funds. In fact, Plaintiffs allege elsewhere that Capital One "froze the account." Compl. ¶ 33. And, Plaintiffs fail to reconcile how Capital One could use frozen funds in an array of daily business activities. The claim should be dismissed because Plaintiffs fail to satisfy the first element of unjust enrichment.

But even assuming Plaintiffs meet the first element, which they do not, they cannot meet the third: Plaintiffs do not state facts showing "that it would be unconscionable for [Capital One] to retain" the alleged benefit. *Plitt v. Greenberg*, 242 Md. 359, 364 (1966); *see also Hamilton & Spiegel, Inc. v. Bd. of Ed. of Montgomery Cty.*, 233 Md. 196, 201 (1963) (A defendant is unjustly enriched only "if the circumstances of the receipt of the benefit are such as between the two that to retain it would be unjust.").

This is true for two reasons. *First*, Capital One's compliance with the UCC—both in processing the wire transfer and leaving the funds in Thomas' account—shows that Capital One's conduct was far from unconscionable, but in fact, legally required. Such adherence to legal obligations cannot amount to unjust enrichment. *See Plitt*, 219 A.2d at 241. *Second*, Plaintiffs

failed to pursue the remedies available to them when they learned of the fraud on September 15, 2020.  As explained above, Maryland's Adverse Claims Statute provides a clear avenue for Plaintiffs to have asserted a claim over the subject funds.  Yet Plaintiffs decided not to pursue such relief, and any alleged benefit to Capital One accrued from Plaintiffs' own inaction.  *Musch v. Underwood*, 179 Md. 455, 459 (1941) ("The doctrine is well settled in this state that where a party has a certain, complete and adequate remedy at law, he cannot sue in equity.").  Accordingly, Plaintiffs fail to state a claim for unjust enrichment.

## V.      ANY AMENDMENT TO THE COMPLAINT WOULD BE FUTILE.

To the extent Plaintiffs seek leave to amend their Complaint to assert a claim under Article 4A, leave should be denied as an amendment would be futile.  As noted above, this Court lacks personal jurisdiction over Capital One.  Article 4A also provides that a beneficiary bank is not liable to the originator for merely for accepting a wire transfer and crediting it to the account identified in the wire transfer.  Furthermore, any common law claims would be preempted by Article 4A or fail for Plaintiffs' failure to comply with the Maryland Adverse Claims Statute.

Plaintiffs' allegations concerning Capital One all stem from them facilitating a voluntary wire transfer to a Capital One account.  Although Plaintiffs try to plead around that fact by arguing that it was Capital One's permitting Thomas and Vanfica to open the subject account which leads to liability, they cannot ignore that the operative mode of loss was their failure to confirm the inaccurate wire transfer instructions, and that Capital One had no duty to Plaintiffs to prevent its customer from withdrawing the funds from the account.  Thus, Plaintiffs simply have no viable claims against Capital One.

## VI.     CONCLUSION

For the reasons set forth above, Capital One requests that Plaintiffs' claims be dismissed with prejudice.

Dated: May 2, 2022                          Respectfully submitted,

                                            /s/ *Emily M. Patterson*
                                            Emily M. Patterson (Fed. Bar No. 19373)
                                            McGUIREWOODS LLP
                                            500 East Pratt Street, Suite 1000
                                            Baltimore, MD 21202
                                            T: (410) 659-4432
                                            F: (410) 659-4482
                                            epatterson@mcguirewoods.com

                                            **Counsel for Defendant Capital One, N.A.**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on May 2, 2022, a copy of the foregoing was served on the following parties via the Court's CM/ECF system.

_____/s/ <i>Emily M. Patterson</i>_____<br>Emily M. Patterson